**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

DERRICK L. WALKER,

      Plaintiff,

v.                                  Case No. 1:21-cv-168-MW/MJF

PROGRESSIVE SELECT
INSURANCE COMPANY,

      Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This civil action started as a breach of contract case that Plaintiff initiated against the insurance company that insured the car he was driving when he was involved in an accident. Plaintiff later signed a broad "Release" that resolved and released Defendant of liability for Plaintiff's claims. In exchange for the release of all claims, Defendant paid Plaintiff $25,000. After Plaintiff received this payment, rather than voluntarily dismiss this case, Plaintiff moved to amend his complaint to add additional claims. Because the "Release" precludes all of the claims that Plaintiff asserts in his proposed amended complaint, Plaintiff's

proposed amendments are futile. Accordingly, the District Court should deny Plaintiff's motion to amend his complaint.

## I. BACKGROUND

### A. <u>The Accident</u>

On March 17, 2017, Plaintiff was involved in a car accident while driving his mother's car. *See, e.g.,* Doc. 107 at 19. The car Plaintiff was driving was insured by Defendant under Plaintiff's mother's insurance policy (the "Policy"). *Id.* Plaintiff alleges that he sustained permanent injuries. Doc. 64-1 at 5–6.

### B. <u>Defendant's Denial of Plaintiff's Claim</u>

On May 8, 2018, Plaintiff sent a demand letter to Defendant for payment of the uninsured and underinsured motorist ("UM/UIM") benefits under the Policy. Defendant declined to act on the demand. Doc. 107 at 41–45. On October 15, 2018, Plaintiff settled with the other driver's insurance company for the policy limits of $50,000. Doc. 64-1 at 7; Doc. 107 at 9.

### C. <u>Plaintiff Files this Civil Action</u>

On October 18, 2021, Plaintiff, proceeding *pro se*, filed this civil action for uninsured or underinsured motorist benefits. Doc. 1 at 10.

On November 16, 2021, Plaintiff amended his complaint. Doc. 5. In his amended complaint, Plaintiff restyled his claim as "breach of contract" and added the following two sentences:

- "Defendant has refused all demands for tender of Plaintiffs underinsured motorist protection"; and

- "PLAINTIFF has complied with all conditions precedent for maintaining a subsequent bad faith action against Defendant, PROGRESSIVE, upon leave from the court in the future."

Doc. 5 at 2.

## D.   <u>The Parties Reach an Oral Settlement Agreement</u>

On August 22, 2022, Plaintiff and Defendant attended a settlement conference conducted by Magistrate Judge Gary R. Jones. During this settlement conference, the parties discussed a release of any "bad faith" claim Plaintiff might file. *See* Doc. 67 at 6. At the conclusion of the settlement conference, the parties orally agreed to settle all of Plaintiff's claims against Defendant in exchange for the full policy limits of $25,000. Doc. 60 at 1–2; Doc. 60-2 at 1. Defendant was to provide a release to Plaintiff that Plaintiff was to sign in exchange for payment of $25,000. Doc. 67 at 2; Doc. 59. The next day, however, Plaintiff sent an email to Defendant in which he stated that he could not "accept settlement" and he "must go to trial . . . ." Doc. 60-1 at 1.

**E.**   **Defendant Moves to Enforce the Oral Settlement Agreement**

On August 25, 2022, Defendant filed a motion to enforce the oral settlement agreement. Doc. 60. Attached to that motion was a copy of the release discussed at the settlement conference. Doc. 60-2 at 1–2. Plaintiff did not file a response in opposition to this motion.

**F.**   **Judge Jones's Report and Recommendation**

On September 12, 2022, Magistrate Judge Jones—who had conducted the settlement conference with the parties—issued a report and recommendation in which he recommended that the District Court grant Defendant's motion and enforce the settlement agreement. Doc. 67. In that R&R, Judge Jones noted that during the settlement conference he "reviewed with each party the terms of the settlement and both sides expressly advised the Court they agreed to settle for those terms." *Id.* at 2. Judge Jones also noted:

> Because a general release was not available at the mediation for Plaintiff to sign—and to avoid any grounds for objection later—the Court reviewed the material terms of the general release. The material terms of the general release were that Plaintiff would release all claims against the Defendant, its subsidiaries, employees, agents and attorneys. Plaintiff advised the Court that he agreed to all terms of the settlement and made no objection at the time.

*Id.*

During the settlement conference, "Plaintiff, Defendant's counsel and Defendant's representative each advised" Judge Jones "that they agreed with the terms of the settlement," and the "terms of the settlement were expressly reflected on the docket in the minutes of the settlement conference." *Id.* at 3. Judge Jones found that "there was a meeting of the minds as to every essential element of the agreement between Plaintiff and Defendant and that there was mutual assent to the terms." *Id.* at 5–6. Plaintiff made the decision to settle with the Defendant and "voiced no objection to the agreed upon settlement at the settlement conference." Doc. 67 at 7.

## G.   <u>The District Court Enforces the Settlement Agreement</u>

Plaintiff did not object to Judge Jones's R&R. On October 11, 2022, the District Court adopted Judge Jones's R&R as the District Court's opinion and granted Defendant's motion to enforce the settlement agreement. Doc. 70.

## H.   <u>Plaintiff's Motion for Reconsideration</u>

On October 18, 2022, Plaintiff moved for reconsideration of the District Court's order enforcing the settlement agreement. Doc. 71. Plaintiff argued that he did not agree to a "full release" of his bad-faith

claim. *Id.* at 4. In support, Plaintiff attached a copy of a "Release" that Plaintiff modified by writing "UIM/UM" in five places on the document. Doc. 71-1 at 10–11.

On October 28, 2022, Defendant responded to Plaintiff's motion for reconsideration. Doc. 73. Defendant argued that the prerequisites necessary for payment, which included release of any bad-faith claim, were discussed and explained to Plaintiff, who "understood and accepted" them. *Id.* at 2–3. On November 17, 2022, the District Court denied Plaintiff's motion for reconsideration. Doc. 76.

## I.    <u>Appeal, Release, and Defendant's Payment of $25,000</u>

On December 6, 2022, Plaintiff initiated an interlocutory appeal of the District Court's denial of his motion for reconsideration. Doc. 78; *see* Notice of Appeal, *Walker v. Progressive Select Ins. Co. ("Walker II")*, No. 22-14072 (11th Cir. Dec. 6, 2022), ECF No. 1-2 at 1.

On November 1, 2023, while the appeal was still pending, Plaintiff communicated with Defendant's counsel regarding settlement of the case. Doc. 105-1 at 1. Two days later, Plaintiff sent a signed "Release" to Defendant. Doc. 99-1 at 1. In the "Release," in exchange for the consideration of $25,000, Plaintiff agreed to discharge his claims and

"forever" release Defendant of liability for "any claims" arising out of the accident or Defendant's handling of Plaintiff's claim. *Id.* On November 7, 2023, pursuant to the "Release," Defendant paid Plaintiff $25,000. Doc. 99 at 2.

On November 8, 2023, Defendant filed a motion to dismiss the appeal because it was moot. *See* Appellee's Motion to Dismiss with Prejudice as Case Has Resolved, *Walker II*, No. 22-14072, ECF No. 61. In the motion, Defendant noted that it "paid the settlement amount that was at issue . . . in exchange for a signed release" and that "[t]hose funds have cleared." *Id.* at 3. Plaintiff did not file a motion in opposition. On December 6, 2023, the United States Court of Appeals for the Eleventh Circuit granted Defendant's motion to dismiss the appeal. *Walker II*, No. 22-14072 (11th Cir. dismissed Dec. 6, 2023).

## J.    Plaintiff's Motion to Amend

On December 21, 2023, Plaintiff moved to amend his complaint to add a claim for "Bad Faith." Doc. 95. On January 2, 2024, Plaintiff filed his proposed amended complaint ("Proposed Complaint"). Doc. 98. Plaintiff's Proposed Complaint contained the following four claims:

- "Breach of Contract";

- False and fraudulent insurance claims" under section 817.234 of the Florida Statutes;

- "Deceptive and unfair trade practices" under section 501.201 of the Florida Statutes; and

- "Breach of the covenant of good faith and fair dealing."

*Id.* at 4–9.

## K.    Defendant Opposes Plaintiff's Motion to Amend

On January 4, 2024, Defendant responded in opposition to Plaintiff's motion to amend his complaint. Doc. 99. Defendant argues that, in exchange for the signed release received on November 7, 2023, it paid Plaintiff $25,000. *Id.* at 2. Because the "Release" embraced all of Plaintiff's claims—including any bad-faith claim—amendment would be futile, and the District Court therefore should deny Plaintiff leave to amend. *Id.* at 2–4.

## L.    The District Court's Order to Show Cause

On January 5, 2024, the District Court ordered Plaintiff to show cause and identify "the legal basis for filing an amended complaint notwithstanding his apparent release of the bad-faith claim that he now seeks to raise before this Court." Doc. 100.

**M.    Plaintiff's Response to the District Court's Order**

On January 9, 2024, Plaintiff responded to the District Court's order. Doc. 101. Plaintiff did not deny executing the release. *Id.* at 4. Rather, Plaintiff argued that the release was unconscionable, and he only "eventually caved in after 4 years" due to "economic and physical duress . . . ." *Id.*

**N.    Telephonic Hearing Conducted by the Undersigned**

On April 29, 2024, the undersigned conducted a telephonic hearing on Plaintiff's motion to amend his complaint. Doc. 108. During the hearing, Plaintiff conceded:

- he had reached a settlement with Defendant on August 22, 2022;

- he signed the "Release" dated November 6, 2023;

- in exchange for signing the Release and settling the case, Defendant paid Plaintiff $25,000; and

- in August 2022, when he previously had attempted to modify the Release to settle only his "UIM/UM" claims, Defendant refused to settle the case and pay Plaintiff.

When the undersigned inquired whether Plaintiff wanted to void the Release and return the $25,000 to Defendant, Plaintiff emphatically replied in the negative. Rather, Plaintiff stated that he desires to keep

the $25,000 Defendant paid to him, not be bound by the terms of the Release, and be able to assert claims against Defendant.

## II. DISCUSSION

Rule 15 of the Federal Rules of Civil Procedure governs amending and supplementing pleadings. A party seeking leave to amend under Rule 15(a) bears the burden of establishing entitlement to such leave. *See In re Engle Cases*, 767 F.3d 1082, 1119 n.37 (11th Cir. 2014). A district court should deny leave to amend when an amendment would be futile. *Id.* at 1108–09; *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 764 F.3d 1327, 1344 (11th Cir. 2014); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

An amendment would be futile "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). More specifically, an amendment would be futile if it seeks to assert a claim that is precluded by a settlement agreement. *Valdiviezo v. Greer*, 787 F. App'x 48, 50 (2d Cir. 2019); *Sundae v. Anderson*, 103 F. App'x 60, 61 (8th Cir. 2004); *see Singh v. Reed*, 551 F. App'x. 927, 929 (9th Cir. 2014); *Turkish v. Brody*, 221 So. 3d 1206, 1214 (Fla. Dist. Ct. App. 2016).

"The validity and effect of a settlement and release are governed by contract law" principles. *Churchville v. GACS Inc.*, 973 So. 2d 1212, 1215 (Fla. Dist. Ct. App. 2008); *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000). The "contract law of the forum state" is the source of those principles. *Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008).

In Florida, "[t]he construction and effect to be accorded a release depends on its purpose, the terms in which it is stated, and the subject matter to which it applies." *Avellone v. Avellone*, 951 So. 2d 80, 83 (Fla. Dist. Ct. App. 2007) (quoting *Cerniglia v. Cerniglia*, 679 So. 2d 1160, 1164 (Fla. 1996)). To properly construe a release, "the entire agreement must be examined rather than detached portions of it." *Id.* When parties use broad language in a settlement agreement, courts must give effect to the text of the agreement. *Martinez v. Preferred Care Partners, Inc.*, 223 So. 3d 1117, 1118 (Fla. Dist. Ct. App. 2017). A party's refusal to return consideration for a settlement precludes that party from pursuing a claim to invalidate the settlement agreement. *Bilder v. Dykstra*, No. 20-3062, 2021 WL 3086201, at *2 (7th Cir. July 22, 2021) (applying Oklahoma law); *Sall v. Luxenberg*, 302 So. 2d 167, 167 (Fla. Dist. Ct. App. 1974).

## A.    Plaintiff Signed the Release

During the telephonic hearing the undersigned conducted on April 29, 2024, Plaintiff conceded that he has signed the "Release" (Doc. 99-1) in exchange for payment of $25,000 from Defendant. Furthermore, through adoption Judge Jones's R&R, the District Court already has found that Defendant entered into a settlement agreement that covered any and all claims Plaintiff might assert against Defendant which arose from the accident that occurred on March 7, 2017. Doc. 70 (adopting Doc. 67 at 2 (finding that Plaintiff's settlement precluded "all claims against the Defendant, its subsidiaries, employees, agents and attorneys")).

## B.    The Release Plaintiff Signed Encompasses the Claims He Seeks to Assert in His Proposed Amended Complaint

The "Release" Plaintiff signed is a one-page document composed of four paragraphs. At the top of the document in boldface, underlined font is the word "Release." Doc. 99-1 at 1. In the first paragraph, the release contains the following language:

> In consideration of the payment of twenty-five thousand DOLLARS ($25,000) . . . the undersigned hereby *forever releases and discharges* Progressive . . . from *any and all claims*, known or unknown, and from *any and all liability* and/or contractual obligations arising now or later in any manner whatsoever, *including any claims arising out of*

Progressive's claim handling . . . of *an accident on or about the 7th day of March 2017*, in Alachua County, Florida.

*Id.* (emphasis added).

The third paragraph of the Release provides:

The undersigned reserves his right to pursue and recover future medical expenses, health care and related expenses from any person, firm, or organization who may be responsible for payment of such expenses, including any first party health or first party automobile personal injury protection or medical payments coverage, if so entitled, *but such reservation does not include the parties released herein.*

*Id.* (emphasis added).

Despite this language, Plaintiff's Proposed Complaint contains claims for:

- Breach of contract;

- "False and fraudulent insurance claims" under section 817.234 of the Florida Statutes;[1]

- "deceptive and unfair trade practices" under section 501.201 of the Florida Statutes; and

- "breach of the covenant of good faith and fair dealing."

---

[1] This statute does not create a civil cause of action for Plaintiff. Rather, it creates a cause of action for certain insurers. *See* Fla. Stat. § 817.234(5)(a). Accordingly, even without the Release, it would be futile to allow Plaintiff to amend his complaint to add a claim that does not exist under the law.

Doc. 98 at 4–8. Under each count, Plaintiff incorporates by reference the first thirty-two paragraphs of his Proposed Complaint, in which he details the March 2017 accident and subsequent events. *Id.* at 1–4.

The plain language of the Release Plaintiff signed precludes the claims Plaintiff seeks to assert in his Proposed Complaint. Indeed, as Plaintiff conceded during the hearing, the Release plainly forecloses Plaintiff's "bad faith" claim, which is a claim that "aris[es] out of" Defendant's handling of Plaintiff's accident under the Policy. Doc. 99-1. Furthermore, Plaintiff does not contend that he was unaware of Defendant's intent to preclude Plaintiff from asserting a "bad faith" claim through the broad language of the Release. *See, e.g.*, Doc. 67 at 6; Doc. 101 at 4.

## C.   Plaintiff Has Not Shown that the Release Is Defective

### 1.   *Plaintiff Now Alleges Unconscionability and Duress*

In an effort to extricate himself from the plain language of the Release that he signed, Plaintiff argues that the Release he signed is void because it is unconscionable and the product of economic duress. Doc. 101 at 4.

Despite having numerous opportunities to raise these arguments before, Plaintiff never did so. For example, he never made these arguments in objections to Judge Jones's R&R. Plaintiff also failed to raise these arguments in his "Emergency Motion for Reconsideration" filed when the District Court ordered enforcement of the Settlement Agreement. Plaintiff's failure to assert these arguments in the past suggests that they are simply *post hoc* attempts to avoid the consequences of the Release Plaintiff signed. Nevertheless, because Plaintiff is proceeding *pro se*, the undersigned addresses these arguments below.

### 2. *Plaintiff Has Not Established Unconscionability*

Plaintiff argues that "the full release stipulation was a case of unconscionable terms . . . ." Doc. 101 at 4. "Unconscionability is a common law doctrine that courts have traditionally invoked to prevent overreaches by one party who seeks to gain 'an unjust and undeserved advantage which it would be inequitable to permit him to enforce.'" *Dunn v. Glob. Tr. Mgmt., LLC*, 506 F. Supp. 3d 1214, 1233 (M.D. Fla. 2020) (quoting *Steinhardt v. Rudolph*, 422 So. 2d 884, 889 (Fla. 3d DCA 1982)). In Florida, both procedural and substantive unconscionability must be

shown by the party seeking invalidation of a contract. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1159 (Fla. 2014). In assessing a claim of unconscionability, courts look to the time at which the contract in question was formed. *Steinhardt*, 422 So. 2d at 889.

### (a).  **Plaintiff Has Failed to Establish Procedural Unconscionability**

Procedural unconscionability is "[t]he absence of meaningful choice . . . , 'which relates to the manner in which the contract was entered.'" *SHEDDF2-FL3, LLC v. Penthouse S., LLC*, 314 So. 3d 403, 409 (Fla. Dist. Ct. App. 2020) (quoting *Basulto*, 141 So. 3d at 1157). In making this determination, courts consider factors that include "the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. Dist. Ct. App. 1999).

As the District Court already has held, Plaintiff and Defendant reached the settlement agreement on August 22, 2022. Doc. 70. As a matter of bargaining power, though Plaintiff was proceeding *pro se*, both parties entered the settlement discussions on relatively even footing. Plaintiff had signaled that he would continue to litigate his claims. Indeed, Plaintiff states he "showed up to the hearing with medical

records and liability documents" in anticipation for discussion. Doc. 101 at 5. Further, although Plaintiff subsequently became homeless, Plaintiff has not alleged that he was homeless on the day of the settlement conference. *See id.* (noting that "Plaintiff became homeless" only "the day after he filed his appellate brief"). As noted above, Plaintiff did not initiate his appeal until December 6, 2022.

Furthermore, Judge Jones ensured that Plaintiff understood the terms of the settlement. Judge Jones took care to "discuss[] at length" the "legal issues" surrounding Plaintiff's claims. Doc. 67 at 6. After having "reviewed with each party the terms of the settlement," "both sides expressly advised the Court they agreed to settle for those terms." *Id.* at 2. As both Judge Jones and Chief Judge Walker agreed, "During the August 22, 2022, mediation, the case unambiguously settled." *Id.*; *see* Doc. 70.

Therefore, there is no procedural unconscionability in the settlement agreement. That alone is fatal to Plaintiff's claim of unconscionability.

**(b).  Plaintiff Has Failed to Establish Substantive Unconscionability**

Substantive unconscionability "focuses on the agreement itself." *Basulto*, 141 So. 3d at 1158 (quoting *Powertel, Inc.*, 743 So. 2d at 574). Specifically, courts consider whether "the terms of the contract are unreasonable and unfair." *Powertel, Inc.*, 743 So. 2d at 574 (quoting *Kohl v. Bay Colony Club Condominium, Inc.*, 398 So. 2d 865, 868 (Fla. 4th DCA 1981)).

The terms of the settlement are not unreasonable or unfair. Broad releases are commonplace and are enforceable according to their terms. *Martinez*, 223 So. 3d at 1118. It is not unreasonable or unfair for a settlement agreement to include a release of all claims in exchange for consideration. *See, e.g.*, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 282 (3d Cir. 2014). The amount of consideration—$25,000—is not an unreasonable or unfair sum.

Plaintiff has utterly failed to demonstrate substantive unconscionability. For this reason, too, his unconscionability argument must be rejected.

### 3.    *Plaintiff Has Not Established Economic Duress*

To establish economic duress, an aggrieved party must show that: (1) the opposing party committed wrongful acts or made threats of wrongful acts; (2) those wrongful acts or threats caused "financial distress"; and (3) the aggrieved party was compelled to agree to the settlement because there was no "reasonable alternative course of action." *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1318 (S.D. Fla. 2016). "Establishing a [defense] of economic duress is extremely difficult." *Id.* at 1317–18. Mere "concern" about a person's "economic situation . . . does not constitute the type of 'duress' which would allow someone to repudiate an otherwise valid agreement." *Gonzalez v. Fla. Dep't of Highway Safety & Motor Vehicles Div. of Fla. Highway Patrol*, 237 F. Supp. 2d 1338, 1361 (S.D. Fla.), *aff'd sub nom. Gonzalez v. Fla. Dep't of Hwy. Safety*, 45 F. App'x 886 (11th Cir. 2002).

Plaintiff is unable to establish even one of the three elements of economic duress. He has failed to identify wrongful acts or threats by Defendant. Plaintiff also has not demonstrated that any act or threat by Defendant caused him financial distress. Finally, Plaintiff has utterly

failed to allege—much less demonstrate—that any act of Defendant compelled him to agree to the settlement because there was no "reasonable alternative course of action." The fact that Plaintiff became homeless—for which Defendant bore no fault—more than one year after he entered the settlement agreement with Defendant, is insufficient to establish economic duress that would negate the settlement.

For these reasons, Plaintiff has not demonstrated that Defendant procured settlement through economic duress.

### III. CONCLUSION

Despite being ordered by the District Court to demonstrate the Plaintiff's proposed amendment of his complaint would not be futile, Plaintiff has failed to make this demonstration. Rather, it is obvious that the Release Plaintiff signed—in exchange for $25,000—precludes the claims he seeks to assert in his proposed amended complaint. Because Plaintiff's proposed amendment of his complaint would be futile, the undersigned respectfully **RECOMMENDS** that:

1.    Plaintiff's "Motion for Leave to Amend Complaint for Bad Faith," Doc. 95, be DENIED.

2.    That the clerk of court terminate all pending motions and

close this case.

At Pensacola, Florida this <u>13th</u> day of May, 2024.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**


## <u>NOTICE TO THE PARTIES</u>

**The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636. The parties also are advised that if they dispute the accuracy of any facts taken from judicially-noticed documents, or if they otherwise wish to be heard on the propriety of the court taking judicial notice of those facts, they must raise this issue in an objection to this report and recommendation.**